JEMMA E. DUNN
Nevada Bar No. 16299
MATTHEW T. HALE
Nevada Bar No. 16880
MICHAEL A. BURNETTE
Nevada Bar No. 16210
**GREENBERG GROSS LLP**
1980 Festival Plaza Drive, Suite 730
Las Vegas, Nevada 89135
Telephone: (702) 777-0888
Facsimile: (702) 777-0801
 *JDunn@GGTrialLaw.com*
 *MHale@GGTrialLaw.com*
 *MBurnette@GGTrialLaw.com*

*Attorneys for Plaintiff*
*Raymond Barnhill*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| RAYMOND BARNHILL, an individual, | Case No.: |
| Plaintiff, | **COMPLAINT FOR DAMAGES** |
| v. | **(1) TORTIOUS DISCHARGE IN VIOLATION OF PUBLIC POLICY** |
| CLEAN HARBORS ENVIRONMENTAL SERVICE, INC., a Massachusetts Corporation, | **DEMAND FOR JURY TRIAL** |
| Defendant. | |

-1-
COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

Plaintiff Raymond Barnhill ("Plaintiff" or "Mr. Barnhill") alleges as follows:

### JURISDICTION AND VENUE

1.      This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332. The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. Additionally, there is complete diversity of citizenship between the parties, as Mr. Barnhill is a citizen of Nevada and Defendant Clean Harbors Environmental Services, Inc. ("Defendant" or "Clean Harbors") is a Massachusetts citizen as it was incorporated in Massachusetts.

2.      Venue is proper in the District of Nevada pursuant to 28 U.S.C. § 1391 because Defendant resides in Washoe County, Nevada and a substantial part of the events giving rise to each of Mr. Barnhill's claims occurred in Washoe County, Nevada.

### PARTIES

3.      Mr. Barnhill is and was at all relevant times herein, a resident of Washoe County, Nevada.

4.      On information and belief, Defendant Clean Harbors Environmental Services, Inc. was at all times mentioned in this Complaint a Massachusetts corporation that conducts business in Washoe County. Defendant is registered and qualified to do business in Nevada and regularly conducts business in Washoe County, Nevada.

### FACTUAL ALLEGATIONS

5.      On or about April 20, 2024, Clean Harbors hired Mr. Barnhill as a Mechanic. In July 2024, Mr. Barnhill was promoted to Lead Hand Mechanic.

6.      In or around May 2024, Clean Harbors hired a mobile tanker certifier to inspect its cargo tanks for compliance with Department of Transportation (Nevada and federal) ("DOT") rules and regulations for transporting hazardous materials. Mr. Barnhill and supervisor Johnny Hammons observed that leaking valves were present on the cargo tanks, which were improperly certified as DOT compliant. Despite management's knowledge of this issue, no action was taken by Clean Harbors to remedy it.

7.      On or about July 30, 2024, Mr. Barnhill was promoted to Lead Hand Mechanic.

COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

Thereafter, numerous employees reported to Mr. Barnhill that a significant number of Clean Harbors' cargo tanks were leaking hazardous chemicals, which were cross contaminated in the cargo tanks.

8.    On or about August 21, 2024, Mr. Barnhill affixed red tags to all the cargo tanks which contained leaks to prevent Clean Harbors from utilizing tanker trailers which were not DOT compliant. Mr. Barnhill informed supervisors William Lindsay and Leslie Owens of the red tags that he placed on the cargo tank with leakage problems. Mr. Lindsay acknowledged Mr. Barnhill engaged in the proper course of action by red-tagging the cargo tanks with leakage issues and confirmed he would reach out to Ryan Shields, General Manager, and Courtney Wraa, Coordinator, to have the affected cargo tanks reinspected for DOT compliance. Despite Mr. Lindsay's representations, the cargo tanks with leakage issues were not re-certified and continued to remain in use.

9.    On or about September 12, 2024, Mr. Barnhill was approached by a concerned driver who was instructed by Clean Harbors to operate non-stainless steel cargo tank with missing safety placards. The same day, Mr. Barnhill emailed Howard Brittingham, Director of Maintenance, to escalate the issues of Clean Harbors' unsafe practices relating to its cargo tanks. Mr. Barnhill informed Mr. Brittingham about DOT violations committed at the direction of Clean Harbors' managing agents with its cargo tanks, such as storing acids in non-stainless cargo tanks, returning cargo tanks to the yard without having them certified as cleaned, and using leaking cargo tankers to haul hazardous hazmat material.

10.    On or about September 13, 2024, Mr. Brittingham called Mr. Barnhill and demanded Mr. Barnhill remove the red tags from the defective cargo tanks. Mr. Barnhill refused to do so as he had no confidence that Clean Harbors would properly inspect the defective cargo tankers to ensure they were safe for its employees and the public. Mr. Brittingham insisted Mr. Barnhill obey his orders, but Mr. Barnhill knew it could result in a serious injury to one of his coworkers and the public at large.

11.    On the same day, Mr. Barnhill informed Clean Harbors that he submitted a police report with the Nevada Highway Patrol ("NHP") detailing the DOT violations that Clean Harbors

committed with its cargo tanks. After he informed Clean Harbors that he had submitted a police report with the NHP, Mr. Barhill was suspended pending an investigation.

12.    On or about September 18, 2024, Clean Harbors terminated Mr. Barnhill's employment in retaliation for his complaints to outside authorities and for refusing to engage in unlawful activity.

13.    *Punitive damages*: Plaintiff is entitled to punitive damages. (42 U.S.C. § 1981a(b); Nevada Revised Statute ("N.R.S.") 42.001, 42.007.)

14.    *Reckless Indifference and Conscious disregard*: Defendant Clean Harbors Environmental Services, Inc. knew of the probable economic harm and emotional distress that would ensue as a result of the wrongful conduct perpetrated. Yet Defendant willfully and deliberately caused the wrongful conduct, both through its actions and inactions.

15.    *Malice:* The conduct of Defendant was committed with malice, including that (a) Defendant acted with intent to cause injury to Plaintiff and/or acted with reckless disregard for Plaintiff's injury, including by terminating Plaintiff's employment and/or taking other adverse job actions against Plaintiff because of their good faith complaints, and/or (b) the conduct of Defendant was despicable and committed in willful and conscious disregard of Plaintiff's rights to work in a workplace free of unlawful harassment, or the economic and emotional distress such harassment and discrimination would cause.

16.    *Oppression:* In addition, and/or alternatively, The conduct of Defendant was committed with oppression, including that the actions of Defendant against Plaintiff were cruel and subjected them to unjust hardship and with conscious disregard of Plaintiff's rights to work in a workplace free of unlawful harassment, or the economic and emotional distress such harassment and discrimination would cause.

17.    *Fraud:* In addition, and/or alternatively, the conduct of Defendant as alleged, was fraudulent, including that Defendant asserted false and pretextual grounds for terminating Plaintiff's employment and/or other adverse job actions, thereby to cause Plaintiff hardship and deprive them of legal rights or otherwise injure Plaintiff.

18.    Further, Defendant is liable for the wrongful acts of its employees, including its

-4-

supervisory personnel, because Defendant had advance knowledge that these employees were unfit for the purposes of the employment and yet employed these employees with a conscious disregard for the rights or safety of others. (42 U.S.C. § 2000e(b); N.R.S. 42.007.)

### FIRST CAUSE OF ACTION

#### (Tortious Discharge in Violation of Public Policy)

19.     Plaintiff was employed by Clean Harbors Environmental Service, Inc.

20.     Plaintiff, acting in good faith, engaged in protected activity by reporting Defendant's illegal activity to the Nevada Highway Patrol and refusing to engage in illegal conduct by refusing to allow his coworkers to operate dangerous non-compliant DOT cargo tanks.

21.     Clean Harbors Environmental Service, Inc. had actual knowledge of Plaintiff's actions and his report to the Nevada Highway Patrol.

22.     The decision of Clean Harbors Environmental Service, Inc. to discharge plaintiff was proximately caused by Plaintiff's protected actions and contravened the public policy of the State of Nevada, as recognized by the Nevada Supreme Court in *Allum v. Valley Bank of Nev*., 114 Nev. 1313, 1323, 970 P.2d 1062, 1068 (1998) and *Wiltsie v. Baby Grand Corp*., 105 Nev. 291, 293, 774 P.2d 432, 433 (1989).

23.     As a consequence of Defendant's conduct, Plaintiff has suffered and will suffer harm, including lost past and future income and employment benefits, damage to his career, and lost wages, overtime, unpaid expenses, as well as interest on unpaid wages at the legal rate from and after each payday on which those wages should have been paid, in a sum to be proven at trial.

24.     As a consequence of Defendant's conduct, Plaintiff has suffered and will suffer psychological and emotional distress, humiliation, and mental and physical pain and anguish, in a sum to be proven at trial.

25.     Upon information and belief, Clean Harbor's policies required an officer, director, or managing agent of the corporation to authorize, direct, or ratify Mr. Barnhill's termination. Upon information and belief, Mr. Lindsay and Mr. Brittingham were managing agents of Defendant. Defendant's conduct constitutes oppression, fraud, and/or malice under NRS 42.007(c) and, thus, entitles Plaintiff to an award of exemplary and/or punitive damages.

26.    As a result, it has been necessary for Plaintiff to expend court costs to pursue this claim. As such, Plaintiff is entitled to recover costs pursuant to NRS 18.020.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

1.    For compensatory damages and other special and general damages according to proof, including, without limitation, lost earnings, salary, bonuses, and other job benefits Plaintiffs would have received but for Defendant's wrongful conduct;

2.    Emotional distress damages;

3.    Punitive and exemplary damages in an amount sufficient to punish Defendant, and to make an example of and deter Defendant from engaging in such conduct in the future;

4.    For pre-judgment and post-judgment interest, as provided by law; and

5.    For other and further relief as the Court may deem just and proper.


DATED: June 27, 2025                    GREENBERG GROSS LLP


By:    _____*/s/ Jemma E. Dunn*_____
    Jemma E. Dunn
    Matthew T. Hale
    Michael A. Burnette

    *Attorneys for Plaintiff*
    *Raymond Barnhill*

## DEMAND FOR JURY TRIAL

Plaintiff Raymond Barnhill hereby demands a jury trial.

DATED: June 27, 2025                    GREENBERG GROSS LLP


By:    _____*/s/ Jemma E. Dunn*_____
                Jemma E. Dunn
                Matthew T. Hale
                Michael A. Burnette

                *Attorneys for Plaintiff*
                *Raymond Barnhill*

COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL